# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| GAYLE OVERTON, | : | |
| Plaintiff, | : | |
| v. | : | CA 10-0491-KD-C |
| WYETH, INC., et al., | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

This matter is before the undersigned, pursuant to 28 U.S.C. § 636(b)(1)(B), on Plaintiff's Motion to Remand (Doc. 16) and brief in support thereof (Doc. 18), both filed September 23, 2010; Defendants Wyeth LLC, Wyeth Pharmaceuticals Inc., Pfizer Inc., and Northstar RX, LLC's Brief In Response to Plaintiff's Motion to Remand (Doc. 27), filed October 7, 2010; the Joinder of McKesson Corporation In Brief In Response to Plaintiff's Motion to Remand (Doc. 28), filed October 7, 2010; and Plaintiff's Reply to Defendants [sic] Response to Plaintiff's Motion to Remand (Doc. 29), filed October 14, 2010. After consideration of the Plaintiff's motion to remand, it is the undersigned's recommendation that it be **DENIED**.

## FINDINGS OF FACT

1. On August 10, 2010, Plaintiff filed her Complaint in the Circuit Court of Clarke County, Alabama (Doc. 1-1), in which she alleges claims of strict liability, negligence, breach of warranty, and misrepresentation and fraud against Wyeth LLC, Wyeth Pharmaceuticals, Inc., Pfizer Inc., Northstar RX LLC, McKesson Corporation,

and Fictitious Defendants A, B, C, D, E, and F[1] ("Defendants"), stemming from alleged injuries she has suffered as a result of ingesting the prescription drug Reglan/metoclopramide HCL ("Reglan/metoclopramide"). (*See generally* Doc. 1-1.) She also alleges that the Defendants' actions, as alleged in the Complaint, "constitute[ ] willful and wanton misconduct in conscious disregard of the rights and safety of the Plaintiff and thereby warrant the imposition of punitive damages." (Doc. 1-1, ¶ 127.)

2. According to the Complaint, "[p]atients who use Reglan/metoclopramide are at a significant and unreasonably increased risk of developing a severe and permanent neurological movement disorder"—Tardive Dyskinesia, which "often results in involuntary and uncontrollable movements of the head, neck, face, arms, legs, and/or trunk, as well as, involuntary facial grimacing and tongue movement, including tongue thrusting, tongue chewing and/or other involuntary movements," and, presently, has "no known cure or effective treatment." (Doc. 1-1, ¶¶ 19-21.) Plaintiff further alleges that, after being prescribed Reglan/metoclopramide by her physician(s) and ingesting the drug as prescribed, she began to exhibit "symptoms including but not limited to, masked face, muscle rigidity and/or tenseness, involuntary movements of arms and legs," and "was subsequently diagnosed with Tardive Dyskinesia on August 6, 2009." (*Id.*, ¶¶ 31-33.) Since her diagnoses, she asserts that she has continued to suffer from symptoms

---

[1] Plaintiff alleges the fictitious defendants to be "persons, sales representatives, district managers, firm or corporations whose fraud, scheme to defraud, and/or other wrongful conduct caused or contributed to the injuries sustained by the Plaintiff, and whose true names are unknown to Plaintiff at this time, but will be substituted by amendment when ascertained." (Doc. 1-1, ¶ 8.) "For purposes of removal . . . , the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(a); *see, e.g., Wright v. Sterling Investors Life Ins. Co.*, 747 F. Supp. 653, 655 (N.D. Ala. 1990) (recognizing same).

associated with the disease, and attempts to alleviate the problems, thus far, have failed. (*Id.*, ¶ 34.) She further asserts that the disease has caused her to suffer "injury, harm, economic loss, including medical bills, medical expenses, and permanent and substantial physical disability" (*id.*, ¶ 70), as well as "extreme emotional distress, anguish, physical and mental suffering, weakness and involuntary shaking, tremors and continuous involuntary movements of her body rendering her physically and permanently impaired" (*id.*, ¶ 71), and experience "extreme embarrassment, shame, anguish, anxiety, and an inability to care for herself." (*Id.*, ¶ 72.)

3. Defendants Wyeth LLC, Wyeth Pharmaceuticals Inc., and Pfizer Inc. filed their Notice of Removal (Doc. 1) on September 10, 2010, alleging that this action could be removed pursuant to 28 U.S.C. § 1441(a) because this Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) since there is complete diversity of citizenship (*see id.*, ¶¶ 3-11) and the amount-in-controversy requirement is satisfied. (*See id.*, ¶¶ 12-18 (relying, at least in part, on the allegations in the Complaint).) In her Motion to Remand (Doc. 16) and brief in support thereof (Doc. 18), Plaintiff alleges that Defendants fail to meet their burden to show that the amount-in-controversy exceeds the $75,000 jurisdictional minimum because (1) it is not "facially apparent" from the Complaint that Plaintiff's damages exceed $75,000 (*see* Doc. 18, pp. 4-10), and (2) Defendants' reliance on prior jury verdicts in similar cases is not appropriate. (*See id.*, pp. 10-13.)

## CONCLUSIONS OF LAW

1. "Any civil case filed in state court may be removed by the defendant to federal court if the case could have been brought originally in federal court." *Tapscott v.*

*MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356 (11th Cir. 1996) (citing 28 U.S.C. § 1441(a)), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). Federal courts may exercise diversity jurisdiction over all civil actions where the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between citizens of different states. 28 U.S.C. § 1332(a)(1). However, "[b]ecause removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly . . . . Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999); *cf. D.M.C. Enters. Inc. v. Best McAllister, LLC*, Civil Action No. 10-00153-CB-N, 2010 WL 3039477, at *2 (S.D. Ala. Aug. 4, 2010) ("Because it is conferred by statute, the right of removal is strictly construed to limit federal jurisdiction.") (citing *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996)).

2. The removing defendants must establish the propriety of removal under Section 1441 and, "therefore, bear[ ] the burden of establishing the existence of federal jurisdiction." *Brown v. Kabco Builders, Inc.*, Civil Action 07-0099-WS-C, 2007 WL 841690, at *1 (S.D. Ala. Mar. 15, 2007) (citing *Leonard v. Enterprise Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002) ("A removing defendant bears the burden of proving proper federal jurisdiction.")). Here, the burden is on the removing defendants to establish both complete diversity—that is, the plaintiff is diverse from every defendant, *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) (citation omitted)—and that the amount in controversy more likely than not exceeds the $75,000 jurisdictional requirement. *See Fitzgerald v. Besam Automated Entrance Sys.*, 282 F.

Supp. 2d 1309, 1314 (S.D. Ala. 2003). Defendants have made a satisfactory showing (*see* Doc. 1, Notice of Removal, ¶¶ 3-11)—and Plaintiff does not contest the fact (*see generally* Docs. 16, 18 & 29)—that complete diversity exists. *See Triggs*, 154 F.3d at 1287. Therefore, the issue for this Court to determine is whether the amount in controversy is satisfied.

      3.    "When, as here, damages are not specified in the state court complaint, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the jurisdictional requirement." *Pate v. State Farm Mut. Auto. Ins. Co.*, No. 3:10cv223/MCR/EMT, 2010 WL 3372195, at *1 (N.D. Fla. Aug. 25, 2010) (citations and internal quotation marks omitted); *see Fitzgerald*, 282 F. Supp. 2d at 1314 ("When the state court complaint is indeterminate, then an intermediate burden[—preponderance of the evidence—]is placed upon the removing defendant since there is no representation by plaintiff's counsel that would be entitled to deference.") (citing *Tapscott*, 77 F.3d at 1356-57). And because defendants removed this case under the first paragraph of Section 1446(b)[2] (*see* Doc. 1, ¶ 14), the Eleventh Circuit's recent decision in *Roe v. Michelin North America, Inc.*, 613 F.3d 1058 (11th Cir. 2010), guides the undersigned's analysis. *See id.* at 1062 (characterizing that case as

---

[2] The first paragraph of 28 U.S.C. § 1446(b) provides:

    The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

a "§ 1446(b) first-paragraph case[ ] in which the plaintiff does not make a specific damages demand"). In *Roe*, the Eleventh Circuit stated:

> If a defendant alleges that removability is apparent from the face of the complaint, the district court must evaluate whether the complaint itself satisfies the defendant's jurisdictional burden. In making this determination, the district court is not bound by the plaintiff's representations regarding its claim, nor must it assume that the plaintiff is in the best position to evaluate the amount of damages sought. [*Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 771 (11th Cir.2010).] Indeed, in some cases, the defendant or the court itself may be better-situated to accurately assess the amount in controversy. *See id.* (explaining that "sometimes the defendant's evidence on the value of the claims will be even better than the plaintiff's evidence," and that a court may use its judgment to determine "which party has better access to the relevant information.").
>
> Eleventh Circuit precedent permits district courts to make "reasonable deductions, reasonable inferences, or other reasonable extrapolations" from the pleadings to determine whether it is facially apparent that a case is removable. *See id.* at 754. Put simply, a district court need not "suspend reality or shelve common sense in determining whether the face of a complaint . . . establishes the jurisdictional amount." *See id.* at 770 (quoting *Roe v. Michelin N. Am., Inc.*, 637 F. Supp. 2d 995, 999 (M.D. Ala. 2009)); s*ee also Williams*[*v. Best Buy Co., Inc.*], 269 F.3d [1316,] 1319 (11th Cir. 2001) (allowing district courts to consider whether it is "facially apparent" from a complaint that the amount in controversy is met). Instead, courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements.

613 F.3d at 1061-62.

4. The Eleventh Circuit further stated that the approach announced in *Roe* "is consistent with those of other circuits," *id.* at 1062, specifically citing, *inter alia*, two Fifth Circuit cases—*Luckett v. Delta Airlines, Inc.*, 171 F.3d 295 (5th Cir. 1999), and *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880 (5th Cir. 2000). *See* 613 F.3d at 1062-63. *Luckett* and *Gebbia* both demonstrate that "the Fifth Circuit has repeatedly acknowledged

6

the power of district court judges to appraise the worth of plaintiffs' claims based on the nature of the allegations stated in their complaints." *Id.* at 1063; *see Luckett*, 171 F.3d at 298; *Gebbia*, 233 F.3d at 833; *cf. Purdiman v. Organon Pharms. USA, Inc.*, Civil Action No. 2:08-CV-0006-RWS, 2008 WL 686996, at *2 (N.D. Ga. Mar. 12, 2008) (pre-*Roe*) (citing both *Luckett* and *Gebbia*, and holding that "[a]lthough the Complaint excludes any reference to the amount of damages Plaintiff has sustained as a result of Defendant's allegedly tortious conduct, after full review and consideration, the Court concludes that is it apparent from the factual allegations in the Complaint that the amount in controversy in this action exceeds $75,000"). Thus, at least in the context of a Section 1446(b) first-paragraph removal case in which the plaintiff does not make a specific damages demand—such as this one—a district court may employ "its judicial experience or common sense in discerning whether the allegations in a complaint facially establish the jurisdictionally required amount in controversy."[3] *Roe*, 613 F.3d at 1063.

5. Plaintiff's Complaint indicates that she already suffers from diagnosed Tardive Dyskinesia, which she characterizes as "a severe and permanent neurological movement disorder" with "no known cure or effective treatment." (*See* Doc. 1-1, ¶¶ 19-

---

[3] Plaintiff argues that *Roe* should be limited to wrongful death actions, noting that "[i]n wrongful death actions denial of remand is not unusual because the Alabama Supreme Court has provided that when a plaintiff alleges in a complaint that a human life was taken it is readily deducible that the amount in controversy exceeds $75,000." (Doc. 18, p. 5 n.5; *see also* Doc. 18, pp. 5-7; Doc. 29, pp. 2-3.) While this Court has applied *Roe*'s mandate to district court judges to use "judicial experience and common sense" to determine that the jurisdictional minimum was met in a wrongful death case, *see White-Spunner Constr., Inc. v. Zurich Am. Ins. Co.*, Civil Action No. 10-0158-WS-C, 2010 WL 3489956, at *3 (S.D. Ala. Aug. 30, 2010), the undersigned does not believe that *Roe*'s "common-sense approach" must be limited to such cases. *See* 613 F.3d at 1063-64 ("This common-sense approach to deciding a jurisdictional challenge *is especially useful* in cases brought under Alabama's Wrongful Death Act, in which no compensatory damages may be recovered." (emphasis added)).

21.) Since her diagnoses, she asserts that she has continued to suffer from symptoms associated with the disease—which Plaintiff alleges often include "involuntary and uncontrollable movements of the head, neck, face, arms, legs, and/or trunk, as well as, involuntary facial grimacing and tongue movement, including tongue thrusting, tongue chewing and/or other involuntary movements"—and attempts to alleviate the problems have been unsuccessful. (*Id.*, ¶¶ 20, 34.) She further alleges that the disease has already caused her great physical, emotional, and monetary damage, which—as indicated in the Complaint—will likely be ongoing. (*See id.*, ¶¶ 70-72.) Moreover, Plaintiff's Complaint—like the complaints in *Roe* and *White-Spunner*—alleges that the defendants acted wantonly (*see* Doc. 1-1, ¶ 127), "which means the damages should be greater and which also implies the [injuries] could have been prevented." *White-Spunner Constr., Inc. v. Zurich Am. Ins. Co.*, Civil Action No. 10-0158-WS-C, 2010 WL 3489956, at *3 (S.D. Ala. Aug. 30, 2010). As such, the undersigned finds that judicial experience and common sense reveal that these allegations "facially establish the jurisdictionally required amount in controversy." *Roe*, 613 F.3d at 1063; *see also Easterling v. Smithkline Beecham Corp.*, Civil Action No. 2:05CV35KS-JMR, 2006 WL 1581322, at *2 (S.D. Miss. June 2, 2006) (court—applying preponderance of the evidence standard and citing *Gebbia*, 233 F.3d at 883—held that "from the face of the complaint, it is apparent that the amount in controversy as set forth in plaintiffs' allegations of damages exceeds the jurisdictional threshold of this court" in a pharmaceutical products liability action where complaint stated no claim for damages, but asked for compensatory and

punitive damages and alleged that "plaintiffs have sustained and will continue to sustain serious and permanent injuries").

  6. This finding is buttressed by persuasive authority in Defendants' brief (Doc. 27), in which courts dealt with *this* jurisdictional issue in cases involving alleged harm caused by *this* drug—Reglan/metoclopramide. *See, e.g., Smith v. Wyeth Inc.*, 488 F. Supp. 2d 625, 630 (W.D. Ky. 2007) (stated, "removing defendants must also establish by a preponderance of the evidence that the amount in controversy exceeds $75,000 to show federal jurisdiction and avoid remand to state court," and held, "that the Plaintiff's allegations of permanent nerve damage, pain and suffering, punitive damages, and past and future medical expenses likely amount to claims in excess of $75,000"); *Copley v. Wyeth, Inc.*, Civil Action No. 09-722, 2009 WL 1089663, at *1-2 (E.D. Pa. Apr. 22, 2009) (single plaintiff sued for "injuries she allegedly sustained from the long-term ingestion of Reglan/metoclopramide as prescribed by her physician" in state court; defendants removed; and although the court's opinion does not indicate that plaintiff even raised amount-in-controversy as a ground to remand her case, the court ruled that "[b]ecause there is complete diversity between Ms. Copley and the Defendants, and because the amount in controversy exceeds $75,000, this Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)."); *see also Easterling*, 2006 WL 1581322, at *2 ("This finding is buttressed by the panoply of similar pharmaceutical cases cited in the defendants' brief and from the experiences of this court in dealing with these types of cases.").

7. Because the cases cited by Defendants in this case involve injuries allegedly caused by the same drug at issue in this case, the undersigned finds them more persuasive than those cases cited by the defendant in its removal petition in *Hill v. Toys "R" Us, Inc.*, Civil Action No. 10-0404-WS-B, 2010 WL 3834532 (S.D. Ala. Sept. 24, 2010), where we *sua sponte* remanded a state court-matter removed to federal court on diversity grounds because we found the only basis for defendant's position that the amount-in-controversy requirement was satisfied was their "'nationwide search,' [which] revealed 16 jury verdicts exceeding $75,000 in cases involving maintenance of a defendant's premises and resulting personal injuries," and the only evidence was "counsel's affidavit that, based on his research into recent verdicts and settlement agreements, he believes the amount in controversy exceeds $75,000." *Id.* at *2; *see id.* at *3 ("all the defendant can say is that, on occasion, shoppers injured in stores have been awarded over $75,000," which "says nothing about whether ***this*** complaint, alleging that ***this*** plaintiff, injured on ***this*** occasion in ***this*** (largely unknown) fashion, receiving these (largely unknown) injuries and experiencing these (largely unknown) damages, places more than $75,000 in controversy in this case") (emphasis in original).[4]

---

[4] In *Hill*, we considered the relevance of portions of the Eleventh Circuit's decision in *Lowery v. Alabama Power Co.*, 483 F.3d 1184 (11th Cir. 2007), to cases removed under the first paragraph of § 1446(b)—such as *Hill* and this one. *See* 2010 WL 3834532, at *2 & n.2. But, as in *Hill*, we need not resolve that issue for purposes of this decision. In *Roe*, the Eleventh Circuit noted that the case there "and the case in *Lowery* were removed under different paragraphs of § 1446(b)" and that "'[w]hile some of the language [of *Lowery*] sweeps more broadly, it is dicta insofar as a § 1446(b) first paragraph case . . . is concerned'". 613 F.3d at 1061 n.3 (quoting *Pretka*, 608 F.3d at 747); *cf. Brown v. Tanner Med. Ctr.*, No. 3:10-cv-316-TFM, 2010 WL 3328500, at *3 (M.D. Ala. Aug. 23, 2010) (recognizing *Roe*'s relevance to Section 1446(b) first-paragraph removal cases, but questioning *Roe*'s relevance to "the effect of *Lowery* on second-paragraph cases").

## **CONCLUSION**

In light of the foregoing, the undersigned **RECOMMENDS** that the motion to remand (Doc. 16) be **DENIED**.

**DONE** this the 29th day of October, 2010.

s/ WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

# MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

l.      *Objection*.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in S.D. Ala. L.R. 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days[5] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[5]     Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" FED. R. CIV. P. 72(b)(2).