# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| GAYLE OVERTON, | : | |
| Plaintiff, | : | |
| v. | : | CA 10-0491-KD-C |
| WYETH, INC., et al., | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

This matter is before the undersigned, pursuant to 28 U.S.C. § 636(b)(1)(B), on Defendants Wyeth LLC, Wyeth Pharmaceuticals Inc., and Pfizer Inc.'s Motion to Dismiss Plaintiff's First Amended Complaint, or in the Alternative Motion for Summary Judgment (Doc. 50) and memorandum of law in support of same (Doc. 51),[1] both filed January 24, 2011; Plaintiff's response in opposition to the motion (Doc. 55), filed February 7, 2011; and the Brand Name Defendants' reply memorandum in further support of their motion (Doc. 56), filed February 14, 2011. After consideration of the Brand Name Defendants' motion to dismiss, it is the undersigned's recommendation that it be **GRANTED**.

## FINDINGS OF FACT

1. On August 10, 2010, Plaintiff filed a complaint (Doc. 1-1) in the Circuit Court of Clarke County, Alabama, in which she alleged claims of strict liability,

---
[1] For purposes of this motion, the undersigned will adopt the parties' practice of referring to Defendants Wyeth LLC, Wyeth Pharmaceuticals Inc., and Pfizer Inc. as the "Brand Name Defendants."

negligence, breach of warranty, and misrepresentation and fraud against all defendants, stemming from alleged injuries she has suffered as a result of ingesting the prescription drug Reglan/metoclopramide HCL ("metoclopramide"). (*See generally* Doc. 1-1.)

2. This matter was removed to federal court in September 2010 (*see* Doc. 1), and after an unsuccessful effort to have the matter remanded to state court (*see* Doc. 33, order adopting report and recommendation (Doc. 30) that motion to remand (Doc. 16) be denied), Plaintiff filed her first amended complaint (Doc. 48) on January 20, 2011.

3. In the amended complaint, and pertinent to this motion, Plaintiff—for the first time—specifically alleges that the metoclopramide she ingested was "manufactured and/or distributed by GENERIC DEFENDANT Northstar Rx." (*Id.*, ¶ 24.) Nowhere in the amended complaint does she allege that the metoclopramide she ingested was manufactured or distributed by any of the Brand Name Defendants. She does, however, allege three causes of action against those defendants—breach of warranty (Count III); misrepresentation and fraud (Count IV); and conscious or negligent misrepresentation involving physical harm (Count V) (*id.*, ¶¶ 115-151).

4. In their motion, Brand Name Defendants contend that "[u]nder settled Alabama law, a plaintiff pursuing product liability claims like those advanced by Plaintiff"—regardless of the way the claims are styled—"must establish that the particular defendant manufactured or sold the specific product used by that plaintiff," and because "Plaintiff has averred that the metoclopramide she ingested was manufactured and sold by defendants other than Wyeth or Pfizer," they cannot be held liable for Plaintiff's alleged injuries. (Doc. 51, p. 2.) Citing this Court's decision in *Mosley v.*

2

*Wyeth*, 719 F. Supp. 2d 1340 (S.D. Ala. 2010), they further contend that we have already "rejected the exact theory of liability advanced against [them] in this case"—that there is "a duty under Alabama law on the part of a manufacturer of brand name drugs that runs to consumers of the generic version of those products manufactured by other companies." (Doc. 51, pp. 2-3 (citing *Mosley*, 719 F. Supp. 2d at 1345-51).) Plaintiff counters that precedent exists "to support Plaintiff's contention that [the Brand Name] Defendants owed a duty to act with due care and to not mislead or misinform such that the misinformation brings harm to another person," and that "where a person's negligence or deceit proximately causes an injury, the conduct is not necessarily insulated from liability by the circumstance that he did not manufacture a product that caused the physical injury." (Doc. 55, p. 2.)

## **CONCLUSIONS OF LAW**

### Legal Standard

1. Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint on the basis that the plaintiff has failed to state a claim upon which relief may be granted. *See* FED. R. CIV. P. 12(b)(6). A Rule 12(b)(6) motion questions the legal sufficiency of a complaint (or portions of a complaint); therefore, in assessing the merits of a Rule 12(b)(6) motion, the court must assume that all the factual allegations set forth in the complaint are true. *See, e.g., United States v. Gaubert*, 499 U.S. 315, 327 (1991); *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990). Moreover, all factual allegations are to be construed in the light most favorable to the plaintiff. *See, e.g., Brower v. County of Inyo*, 489 U.S. 593, 598 (1989).

2. Rule 8(a)(2) generally sets the benchmark for determining whether a complaint's allegations are sufficient to survive a Rule 12(b)(6) motion. *See Ashcroft v. Iqbal*, ___ U.S. ____, 129 S. Ct. 1937, 1949 (2009) ("Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' As the Court held in *Twombly*, . . . the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."). Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.
>
> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

> But where the well-pleaded facts do not permit the court to infer more than
> the mere possibility of misconduct, the complaint has alleged-but it has not
> show[n]-that the pleader is entitled to relief.

*Id.* at 1949-50 (internal citations and quotation marks omitted); *see also id.* at 1950-51 (a plaintiff must nudge his claims "'across the line from conceivable to plausible'").

### Timeliness of Current 12(b)(6) Motion

3. Plaintiff initially argues that the current motion is untimely because the Brand Name Defendants answered the original complaint on September 17, 2010, raising the defense of failure to state a claim (*see* Doc. 1-1, p. 33), but not in a separate motion as required by Rule 12(b).[2] (Doc. 55, p. 4.) *See* FED. R. CIV. P. 12(b) ("A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed."); *see, e.g., Servicio Marina Superior, LLC v. Matrix Int'l Ltd.*, Civil Action No. 07-0770-KD-C, 2008 WL 4571504, at *2 (S.D. Ala. Oct. 14, 2008). The Brand Name Defendants contend that Plaintiff's amended complaint contains "***new matter***"— specifically, in the amended complaint, Plaintiff "for the first time concedes that she did

---

[2] The threshold issue before the Court is not whether the Brand Name Defendants have waived their right to move to dismiss Plaintiff's amended complaint pursuant to Rule 12(b)(6), but instead, whether the current motion is properly before the Court at this time. *See* FED. R. CIV. P. 12(h)(2) (noting that the defense of failure to state a claim upon which relief can be granted may be raised in any pleading allowed or ordered under Rule 7(a), by a motion under Rule 12(c), or at trial); *Alternative Delivery Solutions, Inc. v. R.R. Donnelley & Sons Co.*, No. Civ.SA05CA0172-XR, 2005 WL 1862631, at *4 (W.D. Tex. July 8, 2005) ("A Rule 12(b)(6) motion, in contrast [to a Rule 12(b)(3) motion], may be raised post-answer, including during trial on the merits.") (citing FED. R. CIV. P. 12(h)(2)); *cf. SEC v. Lucent*, No. 04-CV-2315(WHW), 2006 WL 2168789, at *5-6 (D.N.J. June 20, 2006) ("In certain circumstances, the defense of failure to state a claim upon which relief can be granted may still be available even if it were not joined with other 12(b) motions. However, that exception merely allows a party which would have otherwise waived a 12(b)(6) motion to file the functional equivalent of a 12(b)(6) motion at a different time or in a different manner in the proceedings.").

not purchase or consume brand name or generic metoclopramide manufactured or distributed by Wyeth or Pfizer, which gives rise to the basis for this motion"—and "[w]here new matter is pled in an amended complaint that gives rise to a Rule 12 defense, a court's order granting leave to file the amended complaint revives a defendant's right to interject a motion on those grounds." (Doc. 51, p. 2 n.1 (citing cases) (emphasis added).)

4. "[N]ew matter gives rise to [a] defense that did not exist prior to the amendment," and "[a]s a result, the newly available defense is allowed to be brought by a motion to dismiss"; "[c]onversely, if [a] defense previously existed but was not asserted timely, then the right to bring it by a motion to dismiss is not 'revived' by mere amendment." *In re Morrison*, 421 B.R. 381, 386 (Bankr. S.D. Tex. 2009) (citing 5C CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE ("WRIGHT & MILLER") § 1391 (3d ed. 2004)); *compare Artistic Stone Crafters, Inc. v. Safeco Ins. Co. of Am.*, No. CV 108-153, 2010 WL 317472, at *3 (S.D. Ga. Jan. 25, 2010) ("[W]hen parties are granted leave to amend their pleadings, such as in the case *sub judice*, and the **amendment adds a new matter that gives rise to a new, previously inapplicable Rule 12 motion**, the responding party may assert the new Rule 12 defense by motion or responsive pleading.") (emphasis added) *with Limbright v. Hofmeister*, Civil Action No. 5:09-cv-107-KSF, 2010 WL 1740905, at *2 (E.D. Ky. Apr. 27, 2010) ("The filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to the amendment of the pleading.") (quoting WRIGHT & MILLER, § 1388); *Lanehart v. Devine*, 102 F.R.D. 592, 594 (D. Md. 1984) ("[A]mendment of the complaint does not revive the

6

right to interpose defenses or objections which might have been made to the original complaint."); *see also Rowley v. McMillan*, 502 F.2d 1326, 1332-33 (4th Cir. 1974) ("[A]n amendment to the pleadings permits the responding pleader to assert only such of those defenses which may be presented in a motion under Rule 12 as were not available at the time of his response to the initial pleading. An unasserted defense available at the time of response to an initial pleading may not be asserted when the initial pleading is amended."); *Ross v. United States*, 574 F. Supp. 536, 539 (S.D.N.Y. 1983) (same).

5. "[I]f [an] amendment to the complaint contains **new matter which, had it originally been in the complaint, would have allowed the defendant to object by motion**, the defendant's right to object by motion to the complaint as amended cannot have been waived by any prior motion."[3] *Integrated Molding Concepts, Inc. v. Stopol Auctions, L.L.C.*, Civ. No. 06-5015 (PJS/RLE), 2007 WL 2263927, at *3 (D. Minn. Aug. 6, 2007) (quoting *Keefe v. Derounian*, 6 F.R.D. 11, 13 (N.D. Ill. 1946)) (emphasis added). In the seminal case of *Keefe*,

> the amendment merely corrected an insufficient allegation of diversity jurisdiction. [Thus, it did] not revive the defendant's right to challenge the sufficiency of the complaint, which motion made to the original complaint had already been denied, and should likewise not revive his right to object to the service of process, which is an objection that existed at the beginning of the case and should have been raised then.

---

[3] It is immaterial to this Court's analysis whether the initial response to the original complaint is in the form of an answer or a Rule 12(b) motion. *See Fed. Agric. Mortgage Corp. v. It's A Jungle Out There, Inc.*, No. C 03-3721 VRW, 2005 WL 3325051, at *5 (N.D. Cal. Dec. 7, 2005) ("Vintage and the Howers' initial response to the original complaint was in the form of an answer rather than a Rule 12(b) motion. The court perceives the difference to be immaterial.").

*Id.*; *see SEC v. Lucent*, No. 04-CV-2315(WHW), 2006 WL 2168789, at *4 & n.3 (D.N.J. June 20, 2006) ("doubtful" that allegations in an amended complaint that "***supplement, as opposed to replace, previous allegations***" in a complaint already "determined by [a] Court to sufficiently state a claim" can now "form the basis of a challenge on a motion to dismiss for failure to state a claim") (emphasis added); *E. & J. Gallo Winery v. Encana Energy Servs., Inc.*, 388 F. Supp. 2d 1148, 1163 (E.D. Cal. 2005) (court rejected defendants' claim that first amended complaint (or FAC) revived their ability to assert their rights under a forum selection clause, stating that "the FAC adds no new plaintiffs or defendants, it merely ***clarifies*** the scope of damages being claimed by the plaintiff for exactly the same acts that were alleged in the original complaint," and moreover, "[t]he ***argument*** that the losses suffered by Gallo, or any other Gallo entity, were the result of sales carried out under the Agreement ***was available to Defendants from the beginning***"; that is, the additional allegation added to the FAC was "***obvious from the beginning and explicit in the Agreement itself***") (emphasis added).

6. Although, a court should deny a subsequent Rule 12(b)(6) motion where defendants "have not asserted, and the record cannot support a conclusion, that they had no knowledge of the bases of the defenses they raise in the [subsequent motion] at the time they filed their first motions under Rule 12(b)," *Williamson v. Recovery Ltd. P'ship*, No. C2-06-292, 2009 WL 3172648, at *3 (S.D. Ohio Sep. 30, 2009), "[a] defendant is not required to assert defenses not 'then available' in his answer." *Crawford v. U.S. Dep't of*

*Justice*, Civil Action No. 05-1424 (RMU), 2008 WL 2511345, at *1 (D.D.C. June 19, 2008) (quoting FED. R. CIV. P. 12(g)).[4]

7.     The essence of the Brand Name Defendants' motion is that under Alabama law "a plaintiff pursuing product liability claims like those advanced by ***Plaintiff . . . must establish that the particular defendant manufactured or sold the specific product used by that plaintiff***," and because "Plaintiff has averred that the metoclopramide she ingested was manufactured and sold by defendants other than Wyeth or Pfizer," she "cannot hold Wyeth or Pfizer liable for her alleged injuries." (Doc. 51, p. 2 (emphasis added).) The original complaint failed to specify which defendant manufactured and sold the metoclopramide Plaintiff ingested. (*See generally* Doc. 1-1.) Therefore, the defense

---

[4]     *See also Zurich Capital Markets Inc. v. Coglianese*, 383 F. Supp. 2d 1041, 1049-50 (N.D. Ill. 2005) (because a judgment on the merits in another matter was not final when initial motion to dismiss was filed, the defendants' res judicata argument was not ripe at the time they filed their first motion to dismiss, and accordingly, Rule 12(g) did not bar defendants from arguing res judicata in a subsequent motion); *Candido v. Dist. of Columbia*, 242 F.R.D. 151, 161 (D.D.C. 2007) ("The Court cannot agree with the plaintiff's proposition that the District should have known that service was defective when it filed its first Rule 12(b) motion because until the 120-day deadline to effect service elapsed, the possibility existed that the plaintiff would timely correct the deficient service. . . . Thus, the District is not barred from asserting the 12(b)(5) defense for lack of sufficient service of process at this time."); *Harris Bank Naperville v. Pachaly*, 902 F. Supp. 156, 157-58 (N.D. Ill. 1995) ("It is clear that Mr. Pachaly's defense of lack of personal jurisdiction was 'available' to him at the time he filed his first pre-answer motion to dismiss for lack of subject matter jurisdiction. The original complaint names Mr. Pachaly as a defendant, contains many allegations relating to Mr. Pachaly and requests various forms of relief from him. In fact, as regards Mr. Pachaly, the original complaint is almost identical to the amended complaint."); *cf. Albany Ins. Co. v. Almacenadora Somex, S.A.*, 5 F.3d 907, 909-10 (5th Cir. 1993) (reversing district court's grant of a second pretrial motion to dismiss, explaining that "Somex filed its first motion to dismiss in which it raised several of the defenses set out in Rule 12(b), including the defense of improper venue," but chose "not to lodge any specific objection to venue based on the forum clauses," waiting instead "until its second motion to raise the forum clauses as grounds for dismissal"; "having failed to raise in its first motion a specific objection to venue based on the forum clauses, Somex was precluded under Rule 12(g) from raising the objection in a second pretrial motion to dismiss").

asserted by the pending motion "was not then available" at the time the Brand Name Defendants chose to answer the original complaint, as opposed to filing a motion to dismiss under Rule 12(b)(6). *Crawford*, 2008 WL 2511345, at *1. Put another way, the "new matter" contained in the amended complaint not only "clarifies," *Gallo*, 388 F. Supp. 2d at 1163, and "supplements," *Lucent*, 2006 WL 2168789, at *4 & n.3, the allegations in the original complaint, it "gives rise to a new, previously inapplicable Rule 12 motion," *Artistic Stone Crafters*, 2010 WL 317472, at *3, and "had it originally been in the complaint, [it] would have allowed [the Brand Name Defendants] to object by [filing the current] motion."[5] *Keefe*, 6 F.R.D. at 13.

8. Moreover, under the applicable standard for a motion to dismiss for failure to state a claim, the Brand Name Defendants would have had little (if any) likelihood of success—absent the "new matter" in the amended complaint—had they brought this motion in response to the original complaint. Under that standard, "the Court must ***accept as true*** all facts set forth in the plaintiff's complaint and ***limit*** its consideration to the pleadings and exhibits attached thereto." *Denim N. Am. Holdings, LLC v. Swift Textiles, LLC*, No. 4:10-CV-45 (CDL), 2011 WL 318127, at *6 (M.D. Ga. Jan. 28, 2011)

---

[5] Courts have also considered the merits of subsequent Rule 12 motions where they are not "brought for purposes of delay" and resolution of the issues in the subsequent motion promotes efficiencies in the case. *See SCO Group, Inc. v. Novell, Inc.*, 377 F. Supp. 2d 1145, 1151 (D. Utah 2005) ("Even if there was some factual basis for the motion when the prior motion was brought, the motion does not appear to be brought for purposes of delay. In fact, Novell appears to be asserting these issues so that they can be ruled on before further time and money need be spent on other issues in the case. Therefore, whether or not the court's previous order may have triggered the present motion, the court concludes it can properly analyze the merits of Novell's motion.").

(citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009)) (emphasis added).

> Although the complaint must contain factual allegations that "raise a reasonable expectation that ***discovery will reveal evidence*** of" the plaintiff's claims, [*Twombly*, 550 U.S.] at 556, "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable,'" *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556).

*Id.* (emphasis added). Therefore, if the current motion was brought in response to the original complaint, the Court would have had little choice but to deny the motion because, accepting as true all facts set forth in the original complaint, Brand Name Defendants ***could have been*** the manufacturers and distributors of the metoclopramide Plaintiff ingested. By specifying which defendant allegedly manufactured and/or distributed the metoclopramide Plaintiff ingested, the amended complaint, in effect, provides the Brand Name Defendants with the "discovery" they need to bring the current motion. *See Twombly*, 550 U.S. at 556.

9. In the alternative, the Court may consider this motion as timely because there is absolutely no reason for the Court to get mired in procedural issues when it is abundantly clear (as discussed below) that Plaintiff cannot state a claim against the Brand Name Defendants under Alabama law, and that the substance of this motion will only be reurged at a later stage in this proceeding.[6] *See SCO Group*, 377 F. Supp. 2d at 1151

---

[6] The undersigned does note, however, that the Court may be precluded from considering the alternative motion for summary judgment because the Brand Name Defendants have not complied with the requirements of the Court's Local Rules. *See* S.D. ALA. L.R. 7.2(a). Moreover, it would be premature to consider (as the Brand Name Defendants suggest (Doc. 56,

(because it appeared that the defendant was asserting the issues in its motion to dismiss "so that they can be ruled on before further time and money need be spent on other issues in the case" . . . , whether or not the [motion was timely], the court conclude[d] it can properly analyze the merits of [the] motion").

10. Finding that the current motion is indeed timely, the undersigned now turns to the substance of the motion, and initially notes that "Alabama courts have repeatedly rejected a theory of liability wherein plaintiffs have attempted to hold a brand name drug manufacturer responsible for damages caused by a generic brand of their drug manufactured and distributed by a different, unrelated drug company." *Simpson v. Wyeth, Inc.*, No. 7:10-cv-01771-HGD, 2010 WL 5485812, at *3 (N.D. Ala. Dec. 9, 2010).

---

p. 5)) the current Rule 12(b)(6) motion as a motion for judgment on the pleadings under Rule 12(c) because the pleadings in this case have not closed. *See, e.g., Watson v. County of Santa Clara*, No. C-06-04029 RMW, 2007 WL 2043852, at *1 (N.D. Cal. July 12, 2007) (finding that the Rule 12(c) motion was premature because not all defendants had answered the second amended complaint, the court noted that "[w]hen the pleadings are 'closed' is determined by reference to Rule 7(a), which specifies what pleadings are required under the Federal Rules" and "unless the court orders a reply, the pleadings close after the last of the following pleadings in the case has been filed: the answer, a reply to a counterclaim, an answer to a cross-claim, or a third-party answer") (citation omitted); *Collins v. Muskegon County Sheriff's Dep't*, No. 1:05-CV-666, 2007 WL 426586, at *5 (W.D. Mich. Feb. 1, 2007) ("Generally, a Rule 12(c) motion is considered premature if made before an answer is filed.") (citation omitted); *Stands Over Bull v. Bureau of Indian Affairs*, 442 F. Supp. 360, 367 (D. Mont. 1977) (denying defendants' motion because **they** had not filed an answer although other defendants had); *but cf. Johnson v. Dodson Pub. Sch.*, 463 F. Supp. 2d 1151, 1156 (D. Mont. 2006) (finding that defendant's motion "technically was premature" but allowing it because it concerned a cause of action that named only that defendant and plaintiffs had not raised a timeliness objection).

Misrepresentation Claims

11.     Plaintiff asserts two theories of misrepresentation against Brand Name Defendants—one based on fraud and one on negligence.  (*See* Doc. 48, Count IV & Count V.)  "An action for fraudulent misrepresentation is governed by Section 6-5-101 of the Alabama Code."[7]  *Mosley*, 719 F. Supp. 2d 1346 (citing *Fisher v. Comer Plantation, Inc.*, 772 So. 2d 455, 461 (Ala. 2000)).

> In order to succeed on a fraudulent misrepresentation claim, a plaintiff must show 1) a misrepresentation of material fact, 2) made willfully to deceive, recklessly, without knowledge, or mistakenly, 3) which was justifiably relied on by the plaintiff under the circumstances, and 4) which caused damage as a proximate consequence.

*Id.* (citations omitted); *see also Southern v. Pfizer, Inc.*, 471 F. Supp. 2d 1207, 1217 (N.D. Ala. 2006) (same).  Moreover, Plaintiff must establish that the Brand Name Defendants owed her a duty.  *See id.* (citing *Nesbitt v. Frederick*, 941 So. 2d 950, 955 (Ala. 2006) ("An essential element of fraudulent-misrepresentation . . . claims is a duty to disclose."); *see also Southern*, 471 F. Supp. 2d at 1217 (same).  Likewise, where an alleged negligent misrepresentation is "relied upon by third parties, or parties who were not in privity of contract with the person making the misrepresentation, Alabama's Supreme Court has instructed that liability for negligent misrepresentation is predicated upon the existence of a duty."  *Mosley*, 719 F. Supp. 2d at 1345 (quoting *Cooper v. Bristol-Myers Squibb Co.*, Civil Action No. 07-885 (FLW), 2009 WL 5206130, at *11

---

[7]     That section provides that "[m]isrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud."  ALA. CODE § 6-5-101 (1975).

(D.N.J. Dec. 30, 2009) (applying Alabama law and quoting, in turn, *Fisher*, 772 So. 2d at 461)) (internal quotation marks omitted).

> In Alabama, "[t]he existence of a duty is determined by a number of factors, including (1) the nature of the defendant's activity; (2) the relationship between the parties; and (3) the type of injury or harm threatened." *Pritchett v. ICN Med. Alliance, Inc.*, 938 So. 2d 933, 937-38 (Ala. 2006) (internal quotation omitted); *Franklin County School Bd. v. Lake Asbestos of Quebec, Ltd.*, Civ. A. No. 84-AR-5435-NW, 1986 WL 69060, at *6 (N.D. Ala. Feb. 13, 1986) (noting that the traditional elements of a negligence claim, including duty "necessarily imply a relationship between the plaintiff and the defendant" and concluding that plaintiffs who relied on an enterprise liability/collective liability/market share negligence liability theory could not maintain such claims, which had been rejected by the Eleventh and Fifth Circuits, as well as by an Alabama trial court). However, "[t]he key factor is whether the injury was foreseeable by the defendant." *Id.* (internal citations omitted); *see also RSUI Group, Inc. v. Willis of Alabama, Inc.*, Civil Action No. 07-0142-WS-B, 2007 WL 2469571, at *2 (S.D. Ala. Aug. 29, 2007).

*Mosley*, 719 F. Supp. 2d 1346-47; *see Simpson*, 2010 WL 5485812, at *3-4 (the court discussed at length—and heavily relied on—this Court's decision in *Mosley*, initially noting that, the plaintiffs in *Mosley*—**like Plaintiff in this case**[8]—"did not argue that the defendants' product caused them harm, but rather that their dissemination of false and misleading information, which they knew would be relied upon by the generic manufacturers in generating their own labels, was a direct and proximate cause of plaintiffs' injuries").

---

[8] "Plaintiff's claims against Defendants Wyeth and Pfizer **have nothing to do with the Defendants having put Reglan into the stream of commerce**, or that she was directly harmed by the Reglan they once manufactured. Instead, Plaintiff's claims against these Defendants **have everything to do with their negligent misrepresentations in the warning label** that her physician relied upon in prescribing her generic metoclopramide." (Doc. 55, p. 16 (emphasis added).)

14

12. Therefore, whether Brand Name Defendants can be liable to Plaintiff, who admittedly did not ingest metoclopramide they manufactured or distributed (Doc. 48, ¶ 24), for claims sounding in misrepresentation—whether fraudulent, conscious, or negligent (*see* Doc. 48, Count IV (misrepresentation and fraud) & Count V (conscious or negligent misrepresentation involving physical harm) —turns on what—*if any*—duty the Brand Name Defendants owe Plaintiff. *See Mosley*, 719 F. Supp. 2d at 1346-47.

13. As this Court has explained, where a plaintiff presents "no evidence or argument tending to establish that a relationship existed between" the plaintiff and certain brand-name manufacturers of metoclopramide, cites "no binding authority for the assertion that a manufacturer of brand-name drugs owes a duty to consumers of the generic version of their products" or "the contention that an injury resulting from consumption of a generic version of the drug can be considered a 'proximate consequence' of a manufacturer's alleged misrepresentation regarding the brand-name version of the drug," she cannot succeed on either a claim of fraudulent or negligent misrepresentation under Alabama law. *Mosley*, 719 F. Supp. 2d at 1347-48; *see also Buchanan v. Wyeth Pharm., Inc. et al.*, CV-2007-900065, Order at 1, 2008 WL 7136137 (Ala. Cir. Ct. Oct. 20, 2008) (Doc. 51-1, pp. 14-15); *Green v. Wyeth Pharms., Inc. et al.*, CV 06-3917 ER, Order at 1, 2007 WL 6428717 (Ala. Cir. Ct. May 15, 2007) (Doc. 51-2, p. 27) (granting summary judgment to brand-name manufacturers where evidence showed that plaintiff ingested generic form of drug).[9]

---

[9] Neither can FDA regulations provide the requisite duty element of either claim. As this court explained, "[t]he fact that federal law allowed generic manufacturers to streamline

Breach of Warranty Claim

14. Under Alabama law, a plaintiff may assert both a breach of warranty claim and a claim under the Alabama Extended Manufacturer's Liability Doctrine (the "AEMLD") in a case alleging injury causes by an unreasonably dangerous product. *See Vesta Fire Ins. Corp. v. Milam & Co. Constr., Inc.*, 901 So. 2d 84, 102 (Ala. 2004) ("Vesta and Wausau are permitted to plead negligence and breach-of-warranty claims to the extent that they claim that Landmark provided deficient construction or installation services and they can present AEMLD claims with respect to a claim that Landmark provided a defective product."); *see also Spain v. Brown & Williamson Tobacco Corp.*, 872 So. 2d 101, 111 (Ala. 2003) ("[A] claim alleging breach of an implied warranty of merchantability is separate and distinct from an AEMLD claim and is viable to redress an injury caused by an unreasonably dangerous product."); *Mosley*, 719 F. Supp. 2d at 1348 (same).

15. "Although Section 7-2-318 [of the Alabama Code][10] provides a cause of action for breach of warranty to individuals who, lacking privity with a

---

the approval process by relying on the initial warning labels provided by [the Brand Name Defendants], does not create a duty between [the Brand Name Defendants] and a generic consumer." *Mosley*, 719 F. Supp. 2d at 1348. After the Abbreviated New Drug Application (or ANDA) approval "generic manufacturers bear the same burden as brand manufacturers of providing a warning that adequately describes the risks associated with the particular drug they are manufacturing. In other words, after the initial approval (ANDA approval), the generic manufacturers become responsible for their own warning labels and any necessary revisions." *Id.* (citation omitted).

[10] "A sellers' warranty, whether express or implied, extends to any natural person if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty." ALA. CODE § 7-2-318 (1975).

seller/manufacturer, nonetheless were "*affected*" by that seller/manufacturer's "*goods*," it does not, by its terms, provide a cause of action for those who were purportedly affected by the warranty language." *Mosley*, 719 F. Supp. 2d at 1351. Plaintiff is neither a purchaser, user, or consumer of, "nor in contact with, *goods* produced by the manufacturer[s] against whom [she claims] breach of warranty resulting in personal injury," *id.* (emphasis in original), and she admits that her claims against the Brand Name Defendants "have nothing to do with [those] Defendants having put [their *goods*] into the stream of commerce," and "everything to do with their negligent misrepresentations in the *warning labels*." (Doc. 55, p. 16 (emphasis added).) As such, she cannot state a claim for breach of warranty under Alabama law against the Brand Name Defendants.

## CONCLUSION

In light of the foregoing, the undersigned **RECOMMENDS** that the motion to dismiss (Doc. 50) be **GRANTED** and that all claims brought against Defendants Wyeth LLC, Wyeth Pharmaceuticals Inc., and Pfizer Inc. be **DISMISSED WITH PREJUDICE**.

The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 15th day of March, 2011.

s/ WILLIAM E. CASSADY  
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1. *Objection*. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*). The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in S.D. Ala. L.R. 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days[1] after being served with a copy of the recommendation, unless a different different time is established by order. The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. *Transcript (applicable Where Proceedings Tape Recorded)*. Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[1] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" FED. R. CIV. P. 72(b)(2).